**Waldo E. GRANBERRY,**
**Petitioner-Appellant,**

v.

**James THIERET, Warden, Vienna Correctional Center, Respondent-Appellee.**

No. 84–1956.

United States Court of Appeals,
Seventh Circuit.

Decided July 20, 1987.

Howard B. Eisenberg, Southern Illinois University, School of Law, Carbondale, Ill., for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen., Springfield, Ill., for respondent-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and PELL, Senior Circuit Judge.

PER CURIAM.

In early 1960, petitioner Waldo Granberry entered a negotiated plea of guilty in the Circuit Court of Cook County, Illinois, to the offenses of murder, rape, and armed robbery. Granberry was sentenced to 99 years for murder, two concurrent life sentences for rape, and four concurrent one year to life sentences for armed robbery. The Illinois legislature in 1972 passed Ill. Rev.Stat. ch. 38, § 1003–3–5(c), which mandated that the Illinois Parole and Pardon Board should deny parole if it determines that an individual's "release at that time would deprecate the seriousness of his offense or promote disrespect for the law." Because the law had an effective date of January 1, 1973, and did not exempt any parole applicant whose crimes preceded the effective date of the law, *see Heirens v. Mizell*, 729 F.2d 449, 452 (7th Cir.), *certiorari denied*, 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984), the statute applies to parole applicants such as Granberry.

In *Welsh v. Mizell*, 668 F.2d 328 (7th Cir.), *certiorari denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), we held that the 1972 parole criteria violated the *ex post facto* clause of the United States constitution because they constituted "a marked departure [from the previous law], importing for the first time into the parole decision considerations of retributive justice (the relationship between time served and the nature of the offense) and general deterrence (incarceration as a means of promoting general respect for law)." *Id.* at 331. *Welsh*, however, was overruled by this Court in *Heirens v. Mizell*, 729 F.2d 449 (7th Cir.), *certiorari denied*, 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984). In *Heirens*, we held that prior to the enactment of the 1972 criteria, the Illinois Parole Board actually had "possessed broad discretion with regard to parole decisions, and that in the exercise of its discretion the Board could in fact consider principles of general deterrence and retributive justice." *Id.* at 459. We concluded that because the "1972 legislation, in effect, merely codified prior law," and therefore was not disadvantageous to offenders convicted prior to 1972, it did not violate the *ex post facto* clause of the constitution. *Id.*

Waldo Granberry filed the present petition for a writ of habeas corpus, arguing that the 1972 parole criteria constituted a violation of the *ex post facto* clause of the constitution. On the basis of *Heirens*, the district court denied the petition. Granberry appealed and asked this Court to overrule *Heirens*. In *Granberry v. Mizell*, 780 F.2d 14 (7th Cir.1985), we declined to reach the merits of Granberry's argument, concluding that he had failed to exhaust available state remedies. *Id.* at 16. We addressed the exhaustion question even though the state had failed to raise it in the district court. Consistent with cases in this and several other circuits, we determined that because of the peculiar characteristics of the exhaustion of state remedies requirement in habeas corpus proceedings, we would not adhere to the general rule that an issue is waived by the failure to raise it in the district court. *Id.* at 15. We rejected the approach of the Fifth and Eleventh Circuits which had held that the state could waive the exhaustion requirement by the failure to raise it at the proper time. *Id.*

Granberry challenged our decision in the Supreme Court which granted certiorari "[b]ecause the Courts of Appeals have given different answers to the question wheth-

er the State's failure to raise nonexhaustion in the district court constitutes a waiver of that defense...." *See Granberry v. Greer,* ── U.S. ──, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987). In *Granberry,* the Supreme Court rejected the approaches that the various circuits had used to the waiver question and adopted "an intermediate approach" which "direct[s] the courts of appeals to exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the petition forthwith." *Id.* The intermediate approach requires the courts of appeals to "determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." *Id.* 107 S.Ct. at 1675. The Supreme Court gave two examples to guide the courts of appeals. If "the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency may make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis." *Id.* However, "if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court forthwith." *Id.* After delineating the appropriate test, the Court vacated our prior decision and remanded the case to this Court to exercise its discretion in determining whether Granberry should be required to exhaust his state remedies. *Id.* at 1676.

On remand, Granberry argues that this Court should address the merits of his petition because to exhaust state remedies would require a return to the same Illinois appellate court that has already decided the *ex post facto* claim contrary to his interest. *See Harris v. Irving,* 90 Ill.App.3d 56, 45

Ill.Dec. 394, 412 N.E.2d 976 (5th Dist.1980). He claims that the appellate court "would certainly affirm based on its earlier decision, now supported by *Heirens.*" Granberry also argues that requiring him to seek discretionary review in the Illinois Supreme Court after the appellate court rejected his *ex post facto* argument would serve little purpose because the Illinois Supreme Court would defer to our Court's judgment in *Heirens.*

Petitioner's contention is not necessarily correct. While it is true that the Illinois Appellate Court for the Fifth District might well follow the judgment of this Court in *Heirens* and its own precedent, it might also agree with Granberry's argument in this Court that those cases were wrongly decided. More importantly, the Illinois Supreme Court, if it were inclined to grant review, would be faced with an issue of first impression in that court and would not be bound to follow either *Heirens* or *Welsh.* Because that court would consider the issue as one of first impression, it would not be constrained by the doctrine of *stare decisis* and might be as easily persuaded by our opinion in *Welsh* as by our opinion in *Heirens.* The Illinois Supreme Court would also be able to determine whether the 1972 parole criteria violate the *ex post facto* clause of the Illinois state constitution.

Whatever the possibility of success in the state courts may be, we conclude primarily for two reasons that the interests of justice will be best served if we address the merits of petitioner's claim immediately rather than requiring him to exhaust state remedies. First, as discussed below, the merits of petitioner's claim in light of our decision in *Heirens* are barely colorable and can be easily disposed of by this Court. Second, petitioner originally filed his habeas petition on August 10, 1983, approximately four years ago. Although not dispositive, this factor helps persuade us that we should wait no longer to rule on the merits of Granberry's petition.

The merits of the *ex post facto* issue were fully discussed by this Court in its opinions in *Heirens* and *Welsh.* When this Court overruled *Welsh,* it did so only after following the requirements of the circuit

rules, which require that an opinion be circulated among all active members of the Court to determine whether a rehearing *en banc* is necessary. As the opinion indicated, no judge favored a rehearing *en banc* on the question of overruling *Welsh v. Mizell*, 668 F.2d 328 (7th Cir.1982). *See Heirens v. Mizell*, 729 F.2d at 449. When such a procedure is followed, this Court will overrule the later case only in the most extraordinary circumstances. Those circumstances are not present here.

Granberry contends that this Court in *Heirens* incorrectly relied on *People v. Nowak*, 387 Ill. 11, 55 N.E.2d 63, *certiorari denied*, 323 U.S. 745, 65 S.Ct. 67, 89 L.Ed. 597 (1944), in support of its conclusion that Illinois considered principles of general deterrence and retributive justice prior to the 1970s. In *Nowak*, the Illinois Supreme Court stated that "acts of leniency, whether by pardon or parole, are administered by the executive branch of the government in the interests of society and the discipline, education, and reformation of the one convicted." 387 Ill. at 14, 55 N.E.2d at 65 (quoted in *Heirens*, 729 F.2d at 462). Granberry contends that the phrase "interests of society" did not encompass principles of general deterrence and retributive justice and attempts to support his argument with citation to several Illinois opinions. The only Illinois Supreme Court case cited in his brief is *People ex rel. Latimer v. Randolph*, 13 Ill.2d 552, 150 N.E.2d 603, *certiorari denied*, 358 U.S. 852, 79 S.Ct. 80, 3 L.Ed.2d 85 (1958). That case simply states that rehabilitation is a goal of the prison system. *Heirens*, of course, did not disagree with this contention, but rather asserted that rehabilitation had not been the exclusive goal of imprisonment in Illinois. None of the other cited cases, which we agree do support the proposition that rehabilitation was a goal of the prison system, impair the conclusion in *Heirens* that general deterrence and retribution were also permissible considerations during the parole process. *See People v. Walewski*, 91 Ill.App.2d 42, 234 N.E.2d 9 (1st Dist.1968); *People v. Lillie*, 79 Ill.App.2d 174, 223 N.E.2d 716 (5th Dist.1967); *People v. Haynes*, 73 Ill.App.2d 85, 218 N.E.2d 489 (4th Dist.1966); *People v. Brown*, 60 Ill.

App.2d 447, 208 N.E.2d 629 (1st Dist.1965). Granberry's claim that our decision in *Inglese v. United States Parole Commission*, 768 F.2d 932 (7th Cir.1985), detracts from the authority of *Heirens* is also incorrect. *See Inglese*, 768 F.2d at 937 (distinguishing *Heirens*). In short, Granberry provides us with no new reason to reconsider our decision in *Heirens*. We therefore affirm the decision of the district court denying Granberry's petition for a writ of habeas corpus.

AFFIRMED.