919 F.2d 740
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard BLACK, Petitioner/Appellant,
v.
Howard PETERS, Warden and Neil F. Hartigan Attorney General
State of Illinois, Respondents/Appellees.
 No. 89-2486.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 29, 1990.*
Decided Dec. 3, 1990.
 
 Before BAUER, Chief Circuit Judge, and CUMMINGS and POSNER, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Richard Black is an inmate at Pontiac Correctional Center. In 1966 petitioner received concurrent sentences of seventy-five to one hundred years for the murder of a Chicago police officer and twenty to forty years for armed robbery.
 
 
 2
 Petitioner filed a pro se habeas corpus petition under 28 U.S.C. Sec. 2254 relating to the denial of parole and imprisonment. The petition alleged fifteen grounds for relief, all of which involved the constitutional prohibition against ex post facto laws.
 
 
 3
 The district court held that twelve out of the fifteen claims, being merely procedural in nature, did not implicate the ex post facto clause. The remaining three claims did warrant discussion under the ex post facto prohibition, but the district court found no violation and dismissed the petition. Petitioner now appeals pro se from the district court's denial of his Sec. 2254 habeas corpus petition. We affirm.
 
 ANALYSIS
 
 4
 Initially, we note that pro se litigants are not bound by the stringent standards governing formally trained attorneys. Jamison-Bey v. Thieret, 867 F.2d 1046, 1047 (7th Cir.1989). As such, we will liberally construe petitioner's Sec. 2254 petition.
 
 
 5
 A law violates the ex post facto clause if: (1) it has retroactive application and (2) it disadvantages the offender affected by it. Norwood v. Brennan, 891 F.2d 179, 182 (7th Cir.1989). Additionally, the petitioner must also demonstrate that the challenged laws affected a substantive change in his rights, rather than a merely procedural change. Dobbert v. Florida, 432 U.S. 282, 292 (1977).
 
 A. Claims Relating to Procedural Changes
 
 6
 The district court found that the following challenges raised by the petitioner only represented changes in procedure: the revocation of a prisoner's right to waive parole interviews; the increase in membership of the prison review board; the notice to the prosecuting state's attorney and to the victim or victims of prisoner's parole hearing; the limitation on the award of meritorious good time (not to exceed three months); the repeal of compensatory goodtime; the rule directing that the Department of Corrections pay for only three first class letters a week for each prisoner; the rule dictating that prisoners no longer receive interest on trust accounts; the charge for copying of documents; the requirement that prisoners account for clothes and bed clothes; the requirement that prisoners carry identification; and the mandatory testing and quarantining of prisoners for communicable diseases.
 
 
 7
 With the exception of the "good time credit" change, we agree with the district court that these claims do not trigger the protection of the ex post facto clause. Even though these changes may work to the petitioner's detriment as alleged, "a procedural change is not ex post facto." Dobbert, 432 U.S. at 292. The changes in the law do not criminalize previously innocent acts, aggravate the punishment for a prior crime, increase the punishment for a prior crime, or change the amount of proof necessary to convict. Id. (citing Hopt v. Utah, 110 U.S. 574 (1884)). Thus, the district court correctly concluded, that most of the challenged laws were procedural changes and did not violate the prohibition against ex post facto.
 
 B. "Good Time" Credit
 
 8
 However, with regard to the statutory provisions affecting the granting of "good time" credit, we do not reach the question of whether the district court correctly found them to be merely procedural in nature. Instead, we affirm on other grounds. See Baucher v. Eastern Indiana Production Credit Assn., 906 F.2d 332, 335 (7th Cir.1990) ("we can affirm on any basis that appears in the record"). In Weaver v. Graham, the United States Supreme Court held that a Florida statute which altered the availability of good time credit violated the prohibitions of the ex post facto clause. 450 U.S. 24, 28 (1981).
 
 
 9
 This case is distinguishable from Weaver. Unlike the statutory scheme found unconstitutional in Weaver, the new determinate sentencing system is not retroactive and certain Illinois prisoners incarcerated under the old system are entitled to choose between the two systems. See Mosley v. Moran, 798 F.2d 182 (7th Cir.1986) (citing Ill.Rev.Stat. ch. 38 Secs. 1003-3-3, 1003-6-3, 1003-12-5 and 1005-8-1 (1977)). Additionally, as the "prohibition on ex post facto laws presumably requires the continuation of the good time system for those previously incarcerated prisoners for whom it is beneficial", Mosley, 798 F.2d at 185, the Illinois Department of Corrections continues to compute credits based on the prior system if it is more beneficial.
 
 
 10
 Petitioner fails to make out an ex post facto claim. By its terms the new statute is not automatically applied to prisoners sentenced before its enactment. Thus, a critical element of the ex post facto claim, retroactivity of the challenged law, is missing. Moreover, the new system will never be applicable to the petitioner because he is serving an indeterminate sentence of more than twenty years.[1] Petitioner, therefore, must remain on the old parole system. Thus, Petitioner's argument that the new determinate sentencing scheme operates as an ex post facto law because it eliminates the opportunity for parole is groundless.
 
 C. Denial of Parole
 
 11
 Petitioner further alleges that he has been denied parole since 1985 in violation of the ex post facto clause. According to the petitioner, prior to October 4, 1985, prisoners who murdered a police officer were entitled to parole, but as of October 15, 1985, such prisoners were no longer eligible.[2] Petitioner is apparently referring to the "[f]actors [a]ffecting the [p]arole [r]elease [d]ecision" contained in Ill.Admin.Code. ch. IV, Sec. 1610.50(b)(2)(A)(ix). This section lists, although it does not limit, factors which the Parole Board may consider in determining whether to grant or deny parole. Petitioner argues that consideration of the "[t]he fact that the victim was a person known to the defendant to have responsibility for the public safety or welfare such as a police officer ..." in determining parole, amounts to an ex post facto law.[3]
 
 
 12
 Changes in administrative regulations representing an exercise of delegated legislative authority are subject to the prohibition against ex post facto laws. Prater v. United States Parole Com, 802 F.2d 948, 954 (7th Cir.1986) (citing Rodriguez v. United States Parole Comm'n, 594 F.2d 170, 173-74 (5th Cir.1980)). Even so, petitioner's claim must fall. First, this court notes that the fact that a person murdered a police officer is only a factor to be considered in making the parole decision. Section 1610-50 does not require that the board automatically deny parole if one of the many factors set forth in the rule exists' rather Section 1610-50 provides that "[t]he parole decision is a subjective determination based on available relevant information. In determining whether to grant parole the Board looks primarily to the following factors...." Thus, petitioner's contention that Section 1610-50(b)(2)(A)(ix) is a "no-parole" rule is simply wrong.
 
 
 13
 Moreover, the district court correctly found that there was no violation of the ex post facto clause. Although Section 1610-50 operates retrospectively, it does not disadvantage the petitioner. Prior to Section 1610-50's enactment in 1985, the Illinois Parole Board exercised broad discretion in making parole determinations. Heirens v. Mizell, 729 F.2d 449, 462 (7th Cir.1984) (finding that the parole statutes and regulations existing prior to 1978, allowed the Parole Board broad discretion in making parole decisions). Likewise, this circuit has also previously concluded that general deterrence, retribution, and promoting respect for the law are all criteria considered by the Parole Board prior to 1976. Prater, 802 F.2d at 955; Granberry v. Thieret, 823 F.2d 1212, 1215 (7th Cir.1987). Additionally, the public interest has always been considered in the decision to grant or deny parole. Heirens, 729 F.2d at 463.
 
 
 14
 This court concludes that the 1985 administrative regulation in question did not enact a change in the factors previously considered by the Parole Board in making parole decisions. Broad discretion, general deterrence, public safety, and respect for the law necessarily involve an inquiry into the nature of the specific crime committed. Thus, the application of Section 1610-50 to persons imprisoned prior to 1985 does not violate the ex post facto clause. In light of this court's conclusion that the factors considered under section 1610-50 were the same factors considered at the time of the 1965 murder, petitioner's argument that section 1610-50 operates to his disadvantage fails.
 
 
 15
 Finally, petitioner argues that an Illinois law effective in 1985, which criminalized possession of a non-firearm weapon by a prisoner[4] violates the ex post facto clause. Petitioner does not allege any specific facts demonstrating that this new law operates either retroactively or to his disadvantage. Petitioner does not argue that he has been convicted under this new law for previously innocent conduct. Because both factors of the ex post facto analysis, that the law be applied retroactively and be disadvantageous to the prisoner, do not exist, this court finds no violation. Petitioner's speculation as to what would happen if he were convicted under this new law also does not state a cognizable claim.
 
 
 16
 For the reasons stated, We AFFIRM.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 It appears, although it is unclear, that the petitioner at the same time he argues that the mandatory release scheme is an ex post facto law also contends that his constitutional rights were violated because he is not entitled to a mandatory release date under Ill.Rev.Stat. ch. 38, Sec. 1003-3-3(c). This system is inapplicable to persons sentenced before February 1, 1978 or to prisoners whose minimum term is twenty years or more. See Ill.Rev.Stat. ch. 38, 1003-3-2.1 "States are certainly free to amend their sentencing laws ... they are not required to apply them retroactively to persons ... validly sentenced under the law as it previously existed." See United States ex rel Scott v. Illinois Parole and Pardon Board, 669 F.2d 1185 (7th Cir.1982). Indeed, in some circumstances the ex post facto clause expressly prohibits the state from applying new laws retroactively
 
 
 [2]
 The petitioner is mistaken in his belief that the district court, in liberally construing his complaint, transformed his ex post facto claim into a due process claim regarding the sufficiency of the parole denial. The district court's opinion presents an ex post facto analysis of petitioner's claim alleging that new parole criteria amounted to an ex post facto "no-parole" rule
 
 
 [3]
 Petitioner's argument that Section 1610-50 causes Ill.Rev.Stat. ch. 38, Sec. 9-1(b)(1)(2), which sets forth the criteria for determining eligibility for the death penalty, is meritless. Ill.Rev.Stat. ch. 38, section 9-1(b)(1)(2) has not been retroactively applied to the petitioner
 
 
 [4]
 Ill.Rev.Stat. ch. 38, Sec. 24-1.1(b)